No. 25-20036

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

United States of America,

Plaintiff - Appellee

v.

Karina Deluna,

Defendant - Appellant

---

**On Appeal from**
United States District Court for the Southern District of Texas
4:22-CR-610-1

---

**BRIEF OF APPELLANT KARINA DELUNA**

---

SUBMITTED BY:
*/s/ John T. Floyd*
John T. Floyd
SBN: 00790700
jfloyd@johntfloyd.com
3730 Kirby Drive
Houston, TX 77098
713-224-0101 (Office)
713-237-1351 (Fax)

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5ᵗʰ Cɪʀ Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| United States of America | Carmen Mitchell (Appellate Counsel) <br><br> Benjamin J. Smith (Trial Counsel) <br><br> Byron H. Black (Trial Counsel) <br> U.S. Attorney's Office <br> 1000 Louisiana Street, Suite 2300 <br> Houston, Texas 77002 |

| Appellants: | Counsel for Appellants: |
|---|---|
| Karina Deluna | John Floyd (Appellate Counsel) <br> The John T. Floyd Law Firm <br> 3730 Kirby Drive, Suite 750 <br> Houston, Texas 77098 <br><br> Javier Martinez (Trial Counsel) <br> Attorney at Law <br> 1001 McKinney Street, Suite 1600 <br> Houston, Texas 77002 <br><br> Ralph Martinez (Sentencing Counsel) <br> Attorney at Law <br> 440 Louisiana Street, Suite 730 <br> Houston, Texas 77002 |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Honorable George C. Hanks<br>United States District Court Judge<br>515 Rusk St., Room 6202<br>Houston, Texas 77002 | N/A |

*/s/John T. Floyd*
John T. Floyd
Attorney of record for Karina Deluna

## STATEMENT REGARDING ORAL ARGUMENT

Since the issues in this appeal are reviewed de novo and for an abuse of discretion, appellant does not request oral argument. *United States v. Arledge*, <u>553 F.3d 881, 897</u> (5th Cir. 2008); *United States v. Jimenez*, <u>509 F.3d 682, 693</u> (5th Cir. 2007); *United States v. Bell*, <u>367 F.3d 452, 460-61</u> (5th Cir. 2004); *United States v. Booker*, <u>334 F.3d 406</u> (5th Cir. 2003).

# TABLE OF CONTENTS

Contents                                                                    Page(s)

CERTIFICATE OF INTERESTED PERSONS ..................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iv

TABLE OF CONTENTS ................................................................................ v

TABLE OF AUTHORITIES ................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................................... 3

STATEMENT OF THE ISSUES ........................................................................ 3

STATEMENT OF THE CASE ........................................................................... 3

SUMMARY OF THE ARGUMENT ...................................................................11

ARGUMENT.....................................................................................................13

   A.  Appellant's Confession was Not Voluntary ...............................................13

     i. Standard of Review .....................................................................................13

     ii. Discussion....................................................................................................13

   Introduction of the Barrett Rifle was Improper .................................................17

     i. Standard of Review .....................................................................................17

     ii. Discussion....................................................................................................17

Photographs of Irrelevant Firearms Were Improperly Admitted ........................20

   i. Standard of Review .......................................................................20

   ii. Discussion ...................................................................................20

Appellant's Sentence Was Unreasonable ...........................................................23

   i. Standard of Review .......................................................................23

   ii. Discussion ...................................................................................23

CONCLUSION .....................................................................................................27

CERTIFICATE OF SERVICE ...............................................................................29

CERTIFICATE OF COMPLIANCE......................................................................30

# TABLE OF AUTHORITIES

## Cases

*Crane v. Kentucky*, 476 U.S. 683, 687-88, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) ....................................................................................................................................13

*Dickerson v. United States*, 530 U.S. 428, 433, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000)................................................................................................................................12

*Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) .22

*Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992) ............................................15

*Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002) ...........................................15

*States v. Hinojosa*, 484 F.3d 337, 340 (5th Cir. 2007)...........................................22

*Townsend v. Sain*, 372 U.S. 293, 9 L.Ed. 2d 770, 83 S. Ct. 745 (1963) .................15

*United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008) ............................. iv

*United States v. Bell*, 367 F.3d 452, 460-61 (5th Cir. 2004) ...............iv, 12, 13, 15

*United States v. Booker*, 334 F.3d 406 (5th Cir. 2003) .........................iv, 12, 16, 19

*United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) ...............................22

*United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996) ..................... 12, 16, 19

*United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015)......................................23

*United States v. Elmowsky*, 501 F.Supp.3d 236 (S.D.N.Y. 2020) .....................18, 21

*United States v. Feliz*, 794 F.3d 123 (1st Cir. 2015) ..............................................15

*United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998) ......................12

*United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011) ...........................23

*United States v. Jimenez*, 509 F.3d 682, 693 (5th Cir. 2007) ...........................iv, 22

*United States v. Key*, 599 F.3d 469, 475 (5th Cir. 2010) ......................................22

*United States v. Klebig*, 600 F.3d 700 (7th Cir. 2009)...........................................17

*United States v. Medlin*, No. 4:22-cr-00610-2 (S.D. Tex. Dec. 11, 2024)............... 4

*United States v. Ruiz*, 797 F.Supp. 78, 80 (D. P.R. 1992)......................................15

*United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006).....................................22

*United States v. Thomas*, 321 F.3d 627, 631 (7th Cir. 2003) ...............................20

*United States v. Turner*, 674 F.3d 420, 432 (5th Cir. 2012)...................................13

## Statutes

18 U.S.C. § 1001...................................................................................................23

18 U.S.C. § 1002...................................................................................................23

18 U.S.C. § 1003...................................................................................................23

18 U.S.C. § 1004...................................................................................................23

18 U.S.C. § 1010 .................................................................................23
18 U.S.C. § 1011 .................................................................................23
18 U.S.C. § 1012 .................................................................................23
18 U.S.C. § 1021 .................................................................................23
18 U.S.C. § 1291 ................................................................................. 3
18 U.S.C. § 2 ........................................................................................ 4
18 U.S.C. § 3231 ................................................................................. 3
18 U.S.C. § 3501 ........................................................................... 13, 14
18 U.S.C. § 3553 ...................................................................22, 24, 26
18 U.S.C. § 371 .................................................................................... 5
18 U.S.C. § 554 .................................................................................... 5
18 U.S.C. § 924(a)(1)(A) ..................................................................4, 5

**Guidelines**

U.S.S.G. § 2K2.1 ................................................................................24

**Rules**

5th Cɪʀ Rule 28.2.1 .............................................................................. ii
5th Cɪʀ. R. 32.1 ..................................................................................29
Fᴇᴅ. R. Aᴘᴘ. P. 32 ............................................................................29
Fᴇᴅ. R. Aᴘᴘ. P. 4 ................................................................................ 3

**Other Authorities**

*Annual Firearms Manufacturing and Export Report*, Bureau. of Alcohol, Tobacco, Firearms, and Explosives (Feb. 3, 2025)..........................................20
*Annual U.S. Motor Vehicle Production and Domestic Sales*, Bureau of Transp. Stats. (2022)...............................................................................................21
U.S. Sᴇɴᴛ'ɢ. Cᴏᴍᴍ'ɴ., *Interactive Data Analyzer* (2024) ..............................24, 25

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this federal prosecution by virtue of 18 U.S.C. § 3231.

18 U.S.C. § 1291 confers jurisdiction of this Court to hear this appeal, because the appeal comes from a final judgment of conviction and sentence entered on January 23, 2025.

Notice of Appeal was timely filed in accordance with FED. R. APP. P. 4(b) on February 6, 2025.

## STATEMENT OF THE ISSUES

1) Whether the trial court erred in admitting Appellant's recorded statement.

2) Whether the trial court erred in admitting photographs of irrelevant firearms as exhibits.

3) Whether the trial court erred in admitting a physical firearm as an exhibit.

3) Whether the sentence imposed on Appellant was unreasonable.

## STATEMENT OF THE CASE

On December 7, 2022, Karina Deluna, Appellant, and Haley Medlin were charged in a two-count Indictment filed in the United States District Court for the Southern District of Texas, Houston Division.  (**Appx. at 34; ROA.19.**)

Count 1 charged Karina Deluna with making a false statement with respect to records required to be maintained by federal firearms licensed dealer, in violation of 18 U.S.C. § 924(a)(1)(A).[1]  This offense allegedly occurred on or about December 26, 2020.  (**Appx. at 34; ROA.19.**)

Count 2 charged Karina Deluna and Haley Medlin with making a false statement with respect to records required to be maintained by federal firearms licensed dealer, aiding and abetting, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2.[2]  This offense allegedly occurred on or about August 11, 2022. (**Appx. at 35; ROA.20.**)

Codefendant Haley Medlin pleaded guilty to Count 2 on April 26, 2023. Ms. Medlin was eventually sentenced to one year of probation with six months of home confinement as a condition.  *United States v. Medlin*, No. 4:22-cr-00610-2 (S.D. Tex. Dec. 11, 2024).

Approximately 16 months later, on April 17, 2024, a nine-count Superseding Indictment was filed in the United States District Court for the Southern District of Texas, Houston Division, naming Karina Deluna as the defendant.  (**Appx. at 38, ROA.82.**)

---

[1] 18 U.S.C. § 924(a)(1)(A) states in pertinent part: "…[W]hoever—knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter … shall be fined under this title, imprisoned not more than five years, or both."

[2] 18 U.S.C. § 2(a) states "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

Count 1 charged Karina Deluna with conspiracy, in violation of 18 U.S.C. § 371.  According to the Indictment, the conspiracy allegedly continued until on or about August 11, 2022.  (**Appx. at 38-44; ROA.82-88.**)

Count 2 charged Karina Deluna with smuggling goods from the United States, in violation of 18 U.S.C. § 554, and was alleged to have occurred beginning on or about December 26, 2020.  (**Appx. at 44-45; ROA.88-89.**)

Counts 3 through 6 charged Karina Deluna with making a false statement with respect to records required to be maintained by a federal firearms license dealer, in violation of 18 U.S.C. § 924(a)(1)(A).  Count 3 was alleged to have occurred on or about December 26, 2020; Count 4 on or about January 9, 2021; Count 5 on or about July 6, 2021; and Count 6 on or about July 7, 2021.  (**Appx. at 45-47; ROA.89-91.**)

Counts 7 through 9 charged Karina Deluna with making a false statement with respect to records required to be maintained by a federal firearms license dealer, aiding and abetting, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2.  Count 7 was alleged to have occurred on or about December 24, 2021; Count 8 on or about May 19, 2022; and Count 9 on or about August 11, 2022. (**Appx. at 47-49; ROA.91-93.**)

Appellant proceeded to a jury trial, which commenced on July 17, 2024 before the Honorable George C. Hanks, Jr.  (**Appx. at 13; ROA.10**) After selecting a jury, but before the second day of trial could begin, Appellant contracted COVID, and the

trial was continued until September 4, 2024. (**Transcript Day 2 at 4; Appx. at 13; ROA.10.**)

The trial comprised two days of testimony.  On the first day, the United States presented six witnesses.  The first handful of witnesses—Ronald Rolfe, William Ruffin, and Alex Douville—testified that certain firearms require licenses to be exported from the United States, and that neither Appellant nor her codefendant Haley Medlin possessed those licenses.  (**Transcript Day 3 at 21, 31, 35; ROA.696, ROA.709, ROA.713**.)

The government's fourth witness, Ralph Jones, explained that ATF Form 4473 is a form used to document the transfer of a firearm from a licensed firearms dealer to a non-licensed person.  (**Transcript Day 3 at 40; ROA.718.**)  He also testified that Question 11.a informs the purchaser that the purchaser cannot acquire the firearm on behalf of another person.  (**Transcript Day 3 at 42; ROA.720.**)  He also testified that the form states that making false written or oral statements with respect to the transaction is a crime punishable as a felony under Federal law. (**Transcript Day 3 at 43; ROA.721.**)  Mr. Jones also testified that neither Appellant nor Ms. Medlin were federal firearms licensees during the period of January 1, 2017 to May 21, 2023.  (**Transcript Day 3 at 55; ROA.733.**)  The witness also explained that he received information that Appellant purchased eight firearms at Northwest Pawn, and that the purchases consisted of multiple purchases of the same type and

model, and that Appellant did not appear to have employment that would support such purchases.  (**Transcript Day 3 at 57; <u>ROA.735</u>**) Due to the nature of the purchases, the investigation into Appellant and Ms. Medlin began.  (**Transcript Day 3 at 58; <u>ROA.736</u>.**)

On cross examination, Mr. Jones acknowledged that Form 4473 says "that it's not illegal for somebody to … purchase a firearm and then sell it to somebody." (**Transcript Day 3 at 63; <u>ROA.741</u>.**) But, on redirect, he clarified that buying a firearm and later deciding to sell it, is distinguishable from a straw purchase; "[a] straw purchase is the [where] the person intends to buy a firearm on behalf of someone else." (**Transcript Day 3 at 66; <u>ROA.744</u>.**)

The United States' fifth witness was Special Agent Curtis Williams, who testified about his experience using Cellebrite to extract data from cell phones. (**Transcript Day 3 at 69; <u>ROA.747</u>.**)  Specifically, Special Agent Williams extracted data from Appellant's phone, and attempted to extract data from Ms. Medlin's phone. (**Transcript Day 3 at 84; <u>ROA.762</u>.**) Ms. Medlin's phone, however, had been remotely wiped after it was seized. (**Transcript Day 3 at 101-02; <u>ROA.779-80</u>.**)

Special Agent Bynog testified for the entire afternoon of the first day of trial, and into the second day of trial.  (**Transcript Day 3 at 129, Transcript Day 4 at 4; <u>ROA.807</u>, <u>ROA.986</u>.**)  He testified that the firearms Appellant purchased were no

longer readily available to her (**Transcript Day 3 at 145; ROA.823.**), and that Appellant eventually talked to him and wrote a statement detailing the straw purchases. (**Transcript Day 3 at 160; ROA.838.**) Whether Appellant voluntarily agreed to make a statement is of some dispute.  He also testified that some of the firearms were recovered in Mexico.  (**Transcript Day 4 at 28; ROA.1010.**)

Appellant's codefendant, Haley Medlin, followed Special Agent Bynog's testimony.  She testified that Appellant's husband, Eric Deluna, instructed her: to get in touch with Appellant; to go to his mother's herbalist shop; get a sum of cash; purchase firearms using her name; and then return the firearms to Appellant's house. (**Transcript Day 4 at 57-59; ROA.1039-41.**)  She also testified this happened more than once.  (**Transcript Day 4 at 63; ROA.1045.**)

At trial, trial counsel made a number of timely objections. Notably, he objected to the introduction of Appellant's recorded statements on the grounds that they were not voluntarily made. (**Appx. at 90-92; ROA.800-02.**) Additionally, he objected to the in-court display of a Barrett Model 82A1 .50-caliber rifle as being prejudicial.  (**Appx. at 86-88; ROA.794-96.**) Trial counsel also objected to the introduction of a series of photographs of firearms that were not part of the alleged offense as being prejudicial.  (**Appx. at 94-96; ROA.878-80.**)

The jury returned a verdict on September 6, 2024. The jury acquitted Appellant of Count 2 (Smuggling), but convicted her of Counts 1 (Conspiracy), and

8

3 through 9 (False Statements) of the Superseding Indictment.  (**Appx. at 52-54; ROA.275-77.**)  Specifically, the jury found that object of the conspiracy was making false statements on firearms forms, not smuggling.  (**Appx. at 52-54; ROA.275-77.**)

The Initial PSR was disclosed on October 15, 2024.  The Initial PSR calculated a Total Offense Level of 34, with a Criminal History Category of II, based on three relatively minor theft misdemeanors. (**ROA.1576-77, 1579.**) The resulting Guidelines range for imprisonment was 168 to 210 months. (**ROA.1583.**)

The United States objected to the Initial PSR on October 30, 2024, arguing that the base offense level used by the PSR writer (20) was too high.  (**ROA.1588-90.**) Instead, argued the United States, a much lower base offense level of 12 should be applied because the rifle in question in this case did not have a "large capacity magazine." (**ROA.1588-90.**) The United States calculated a Total Offense Level of 26, with a criminal history category of II.  This would result in a guideline sentence of 70-87 months incarceration. (**ROA.1588-90.**)

The Final PSR was filed on November 5, 2024. It is essentially identical to the Initial PSR except for the base offense level. Instead of the original base offense level of 20, the PSR writer calculated a base offense level of 14.  In the PSR addendum, the PSR writer explained that the offense was committed with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm to a prohibited person.  (**ROA.1604-05.**)

Sentencing Counsel Ralph Martinez filed no objections to the PSR, and indeed, did not file a Sentencing Memorandum.

At Sentencing on January 13, 2025, the Court adopted the United States' argument that the base offense level is 12. (**Appx. at 114; ROA.1319.**) The United States requested a sentence of either 87 months—based on the Guidelines calculations—or at least the statutory maximum of one count: 60 months. (**Appx. at 116; ROA.1324.**) Sentencing Counsel made vague suggestions to the court that the guidelines range was too high, but did not ultimately request a specific sentence. Ultimately, the court sentenced Appellant to 60 months as to Count 1 and 17 months on each count to run concurrently to one another and consecutive to Count 1 for a total effective sentence of 87 months in the custody of the Bureau of Prisons. (**ROA.1333.**)

This was an obvious misstatement, and to correct the misstatement, a Resentencing hearing was conducted on January 23, 2025. (**Appx. at 120; ROA.1340.**) "[A]lthough I stated the correct total sentence in this case, I didn't state the correct breakdown of that sentence." Thus, the court sentenced Appellant to "60 months as to Count 1 and 27 months as to each of Counts 3 through 9, those counts to be served concurrently to one another and consecutive to Count 1 for a total term of 87 months in the custody of the Bureau of Prisons." (**Appx. at 120; ROA.1340.**)

Appellate Counsel substituted into the case and timely filed a Notice of Appeal timely. (**Appx. at 27; <u>ROA.310</u>.**) This Appeal follows.

## SUMMARY OF THE ARGUMENT

The introduction of Appellant's recorded statements was error because the statements were obtained through coercion. They were thus involuntary. Appellant was prejudiced by these statements because they contained admissions of making false statements with respect to ATF Form 4473.

The introduction of the physical Barrett rifle was an abuse of discretion because it was unfairly prejudicial and tended to confuse the issues involved in this case. Appellant was prejudiced by this admission because it could inflame the concerns of the jury and could lead them to believe that she was a more dangerous individual than warranted given the offenses charged.

Likewise, the introduction of photographs of irrelevant firearms taken from Appellant's phone was an abuse of discretion because they were unfairly prejudicial and tended to confuse the issues involved in this case. Appellant was prejudiced by this admission because it could inflame the concerns of the jury and could lead them to believe that she was a more dangerous individual than warranted given the offenses charged.

Finally, Appellant's sentence of 87 months imprisonment was unreasonable because she was sentenced to more than the statutory maximum for each of the

statutes at issue in this case. Furthermore, her sentence was higher than the majority of sentences imposed in similar false statements cases, and was much higher than the average and median sentences imposed for similar conduct.

## ARGUMENT

### A.  Appellant's Confession was Not Voluntary

### i. Standard of Review

A district court's determination that a confession is voluntary is a question of law and is reviewed de novo, but the factual conclusions underlying the determination are reviewed for clear error.  *United States v. Bell*, 367 F.3d 452, 460-61 (5th Cir. 2004) (citing *United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998)).  When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial. *Id.*  This court applies a highly deferential standard in reviewing a district court's evidentiary rulings, reversing only for abuse of discretion. Even then, the error is not reversible unless the defendant was prejudiced.  *United States v. Booker*, 334 F.3d 406 (5th Cir. 2003) (citing *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996)).

### ii. Discussion

The Constitution prohibits admission of a coerced confession to prove a defendant's guilt.  *Dickerson v. United States*, 530 U.S. 428, 433, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000). Accordingly, in federal courts, trial judges are tasked with

determining the voluntariness of a confession before trial. See 18 U.S.C. § 3501(a)[3];

*Crane v. Kentucky*, 476 U.S. 683, 687-88, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986);

Bell, 367 F.3d at 461.

"[T]he physical and psychological environment that yielded the confession,"

is a "purely legal question." *Crane*, 476 U.S. at 688-89. The trial court is tasked with

reviewing "the totality of the circumstances, including both the nature of the police

activity and the defendant's situation" to decide "whether the will of the defendant

had been overborne so that the statement was not his free and voluntary act." *United*

*States v. Turner*, 674 F.3d 420, 432 (5th Cir. 2012) (internal citations omitted). This

inquiry "takes into consideration the totality of all the surrounding circumstances—

both the characteristics of the accused and the details of the interrogation." *Id.*

"Coercive police conduct is a necessary prerequisite to the conclusion that a

confession was involuntary, and the defendant must establish a causal link between

the coercive conduct and the confession." *Id*. at 432-33.

There are five suggested criteria for determining whether a confession was

voluntary, of which three are pertinent to this case: whether or not the individual was

---

[3] 18 U.S.C. § 3501(a) states in pertinent part: "In any criminal prosecution brought by the United States … a confession … shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."

advised or knew that he was not required to make any statement and that any such statement could be used against her, whether or not the individual had been advised prior to questioning of her right to the assistance of counsel; and whether or not the individual was without the assistance of counsel when questioned and when giving such confession.  18 U.S.C. § 3501(b).  No one criterium is conclusive on the issue of voluntariness of the confession.  Id.

It is uncontroverted that Appellant was not advised of her rights to remain silent and to assistance of counsel.  Likewise, it is uncontroverted that she was without the assistance of counsel while being questioned. (**Appx. at 91; ROA.801.**)

Of primary concern was that Special Agent Bynog appeared to have threatened Appellant with getting CPS involved if she did not answer his questions. On the first day of testimony, Special Agent Bynog testified that he gave Appellant an opportunity to have an 18-year-old adult take care of the children present in her house.  (**Appx. at 101; ROA.993.**)  On the second day of testimony, however, Special Agent Bynog had to admit that he did not give her any opportunity to do so before threatening her with having CPS get involved.  (**Appx. at 101; ROA.993.**)

In addition, the agents interviewing her never told her that she was free to end the questioning, and that she could leave their presence.  (**Appx. at 91-92; ROA.801-02.**)  Adding to the psychological coercion present at the time of the questioning, the agents arrested Ms. Medlin in front of her, indicating to Appellant

15

that she would be next if she didn't cooperate.  (**Appx. at 91-92; <u>ROA.801-02</u>.**)
Additionally, there were veiled threats to implicate her mother.

The trial court's sister court in Puerto Rico faced a similar scenario, and there,
the trial court also erred.  In *United States v. Feliz*, <u>794 F.3d 123</u> (1st Cir. 2015), the
defendant was a youth with no prior record. He was convicted of possession of a
firearm in furtherance of a drug trafficking crime, and possession with intent to
distribute cocaine base. His conviction was based largely on two written confessions,
induced by threats made to him as to repercussions to his mother and his young
siblings if he did not confess.  *Id.* 125-26.

"A confession which is seemingly coerced by psychological pressure should
be held to be involuntary." *United States v. Ruiz*, <u>797 F.Supp. 78, 80</u> (D. P.R. 1992)
(citing *Townsend v. Sain*, <u>372 U.S. 293</u>, <u>9 L.Ed. 2d 770</u>, <u>83 S. Ct. 745</u> (1963)
(overruled and superseded on multiple separate grounds).  "[T]rickery or deceit is
only prohibited to the extent that it deprives the defendant of knowledge essential to
his ability to understand the nature of his rights and the consequences of abandoning
them." *Bell*, <u>367 F.3d at 461</u> (citing *Soffar v. Cockrell*, <u>300 F.3d 588, 596</u> (5th Cir.
2002) (en banc); but *see also Self v. Collins*, <u>973 F.2d 1198, 1205</u> (5th Cir. 1992)
(finding that mere trickery alone will not necessarily invalidate a confession)).

The questioning agents' actions in this case—threatening Appellant's mother
and the children in her care, combined with a refusal to provide her with notice of

her rights—created the same improper psychological coercion on the defendant as seen in *Feliz* and *Ruiz*. The combined effect of these tactics made Appellant's confession involuntary.

Because Appellant's confession was involuntary, her conviction must be overturned and the case remanded to the District Court for a new trial with an instruction to the court that Appellant's confession is inadmissible.

## Introduction of the Barrett Rifle was Improper

### *i. Standard of Review*

This court applies a highly deferential standard in reviewing a district court's evidentiary rulings, reversing only for abuse of discretion. Even then, the error is not reversible unless the defendant was prejudiced. *United States v. Booker*, 334 F.3d 406 (5th Cir. 2003) (citing *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996)).

### *ii. Discussion*

On the first day of testimony, Appellant objected to the introduction of the Barrett rifle because "there's no relevance or probative value." (**Appx. at 87; ROA.795.**) The government responded that the firearm is not a demonstrative piece of evidence—it's one of the firearms that was purchased. (**Appx. at 87; ROA.795.**) Trial Counsel responded that the charges facing Appellant do not include possession of a firearm, and a photograph of the specific firearm would suffice to demonstrate

what was purchased, and wouldn't be as inflammatory and prejudicial. (**Appx. at 87; ROA.796.**)

In a Seventh Circuit case, *United States v. Klebig*, 600 F.3d 700 (7th Cir. 2009), the demonstration of a large number of firearms was determined to be inherently prejudicial because that evidence "invite[d] the jury to decide the case on their fear or disklike of [the defendant] rather than on the real issues in the case." *Klebig*, 600 F.3d at 713. Importantly, the defendant in *Klebig* was accused of possession an unregistered rifle and an unregistered silencer. Display of an unregistered rifle may have been directly pertinent to the offense charged in that case, but the display of firearms was still determined inherently prejudicial:

The venire panel in Appellant's case contained a surprising number of individuals who expressed misgivings about so-called assault rifles. For example: Juror No. 11 stated that "There should be an assault weapons ban" during voir dire. (**Transcript Day 1 at 107; ROA.526.**) Similar concerns were expressed by, at a minimum, seven potential jurors. (**Transcript Day 1 at 108-09, 111-12, 149-50, 161; ROA.527-28, ROA.530-31, ROA.568-69, ROA.580.**).

The United States called attention to the firearm's potential danger: "Just for the Court awareness, this firearm is fully unloaded and all of the United States Marshal's protocols have been followed." (**Transcript Day 3 at 179; ROA.857.**) Its removal is also addressed by the United States the following day: "And just for

the purpose of the record, that's Government Exhibit 22, and it is no longer in the courtroom." (**Transcript Day 4 at 33; ROA.1015.**)

A Barrett .50-caliber rifle is a large piece of equipment. It can be four to five feet long, featuring tripod supports, and weighing over 30 pounds. *Model 82A1—Specifications*, Barrett.net (2025).[4] By comparison, the other firearms allegedly straw purchased by Appellant were much smaller and far less physically imposing. The display of the Barrett, in other words, was intentionally designed to influence the jury to make a determination based not on whether paperwork was filled out truthfully, but on the implied danger posed by Appellant.

The Southern District of New York confronted a similar concern in 2020. In *United States v. Elmowsky*, 501 F.Supp.3d 236 (S.D.N.Y. 2020), the District Court relied on *Klebig* to reiterate that physical displays of firearms tend to produce prejudicial effects because the display tends to suggest that the Defendant is especially dangerous. *Elmowsky*, 501 F.Supp.3d at 240. This concern is compounded when the actual charge has nothing to do with possession of a dangerous weapon.

In Appellant's case, the trial court admitted a picture of the actual rifle at Exhibit 19, and the United States was able to simply refer to the photograph during closing arguments. (**Transcript Day 5 at 18; ROA.1257.**) A photograph of the rifle

---

[4] Available at: https://barrett.net/products/firearms/model-82a1/ (last visited May 27, 2025).

would have been sufficient to demonstrate that a particular firearm was purchased, and it would have avoided the ancillary prejudicial effects involved in displaying the actual firearm.

Because the admission of the Barrett rifle was prejudicial, Appellant's conviction must be overturned and the case remanded to the District Court for a new trial with an instruction to the court that the physical Barrett rifle cannot be displayed in the courtroom.

## Photographs of Irrelevant Firearms Were Improperly Admitted

### i. Standard of Review

This court applies a highly deferential standard in reviewing a district court's evidentiary rulings, reversing only for abuse of discretion. Even then, the error is not reversible unless the defendant was prejudiced. *United States v. Booker*, 334 F.3d 406 (5th Cir. 2003) (citing *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996)).

### ii. Discussion

On the first day of testimony, the United States sought to introduce twelve photographs of various firearms. (**Appx. at 94-96; ROA.878-80.**) These photographs were identified as Exhibits 45 through 56. Trial counsel was allowed to take the offering witness—Special Agent Bynog—on *voir dire* to determine his

knowledge of the particular photographs. Special Agent Bynog could not identify who took the photographs, and he acknowledged that none of the firearms were the subject of the superseding indictment filed against Appellant. (**Appx. at 94-96; ROA.878-80.**)

Trial counsel objected to the introduction of the pictures on relevancy grounds, and the United States argued that they are relevant "because they show familiarity with firearms, which is the whole subject of this investigation." (**Appx. at 94-96; ROA.878-80.**)

The court overruled the objection and admitted Exhibits 45 through 56. (**Appx. at 94-96; ROA.878-80.**)

Perhaps the photographs would have been more probative than prejudicial if Appellant had been charged with an offense alleging possession of firearms. Even then, however, the Seventh Circuit has determined that photographs of a defendant's gun tattoo was prejudicial because they were admitted for no purpose "other than to establish [defendant's] propensity to possess guns." *United States v. Thomas*, 321 F.3d 627, 631 (7th Cir. 2003). Moreover, establishing that a defendant is familiar with firearms is an empty argument—in calendar year 2023, a total of 9,772,259 firearms were manufactured in the United States. *Annual Firearms Manufacturing and Export Report*, Bureau. of Alcohol, Tobacco, Firearms, and Explosives (Feb. 3,

2025).[5] In 2021, a similar number of vehicles were manufactured in the United States. *Annual U.S. Motor Vehicle Production and Domestic Sales*, Bureau of Transp. Stats. (2022).[6] Firearms, in other words, are not obscure, rare items. "[S]urely [a court] would not require evidence that [a defendant] knew what an automobile was if he were on trial for possession of a stolen automobile." *Thomas*, 321 F.3d at 632.

The "whole subject" of Appellant's prosecution, however, were the false statements on ATF Form 4473. Appellant's familiarity with firearms, or lack thereof, has no bearing on whether she made false statements on Form 4473. The introduction of the pictures, therefore, was to inflame the jury. As other trial courts and circuit courts have determined, introducing photographs of firearms that were not involved in the subject of a case's indictment "would not serve to help the jury understand" how a charged offense was committed. *Elmowsky*, 501 F.Supp.3d at 241.

Because the admission of the twelve photographs of irrelevant firearms was prejudicial, Appellant's conviction must be overturned and the case remanded to the

---

[5] Available at:
https://www.atf.gov/explosives/docs/report/afmer2023finalreportsummarycoversheet5081pdf/download (last visited May 27, 2025).
[6] Available at: https://www.bts.gov/sites/bts.dot.gov/files/2022-09/table_01_15_092022.xlsx (last visited May 27, 2025).

District Court for a new trial with an instruction to the court that the physical Barrett rifle cannot be displayed in the courtroom.

## Appellant's Sentence Was Unreasonable

### *i. Standard of Review*

"[C]ourts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). "We review the district court's interpretation and application of the Sentencing Guidelines de novo, and its factual determinations for clear error." *United States v. Jimenez*, 509 F.3d 682, 693 (5th Cir. 2007) (citing *United States v. Hinojosa*, 484 F.3d 337, 340 (5th Cir. 2007)). "In reviewing a non-[G]uidelines sentence for substantive unreasonableness, the court will consider the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Key*, 599 F.3d 469, 475 (5th Cir. 2010) (quoting *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008)) (internal quotation marks omitted).

### *ii. Discussion*

Substantive reasonableness review "must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a)." *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). "A non-Guideline[s] sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should

have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id.* at 708. This court's "review for substantive reasonableness is 'highly deferential,' because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015) (quoting *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011)).

Congress indicated that a false statements offense should be punished only up to five years. However, the Sentencing Guidelines make it all too easy to drastically exceed that statutory maximum.

At core, Appellant was convicted of making false statements. To this end, her offense is more similar to a false statements conviction under any of the following inexhaustive list:

- 18 U.S.C. § 1001 (maximum sentence of five years);
- 18 U.S.C. § 1002 (maximum sentence of five years);
- 18 U.S.C. § 1003 (maximum sentence of five years);
- 18 U.S.C. § 1004 (maximum sentence of five years);
- 18 U.S.C. § 1010 (maximum sentence of two years);
- 18 U.S.C. § 1011 (maximum sentence of one year);
- 18 U.S.C. § 1012 (maximum sentence of one year); or
- 18 U.S.C. § 1021 (maximum sentence of five years).

In other words, in general, the United States Congress has determined that individuals providing false information to obtain goods or services generally should be punished no more than five years, and often, less than five years.

Here, the trial court did not take steps to avoid unwarranted sentencing disparities. Of 7,742 cases reported to the Sentencing Commission involving U.S.S.G. § 2K2.1 in fiscal year 2024, 69.2% of the sentences imposed were five years or less. Only 23.6% of imposed sentences ranged from five years to ten years. The average length of sentence for this guideline was 49 months of imprisonment, with the median length of sentence being 38 months. U.S. SENT'G. COMM'N., *Interactive Data Analyzer* (2024).[7]

Appellant received 87 months of imprisonment, placing her in a category that should be reserved for the more dangerous members of society. As noted in the PSR, in the United States' objections to the PSR, and by the United States at sentencing, a harsh sentence is improper. The PSR, for example, noted that "in light of the defendant's minimal prior custodial history, the Court may wish to consider whether a sentence within the advisory Guideline range is greater than necessary in light of the parsimony clause of 18 U.S.C. § 3553(a)." (**ROA.1613.**) And at sentencing, the United States indicated that a concurrent sentence capped at each

---

[7] Available at: https://ida.ussc.gov (last visited May 22, 2025). All tables and figures in the Interactive Data Analyzer currently reflect data collected by the United States Sentencing Commission as of February 14, 2025.

counts' maximum sentence of 60 months (five years) would be an acceptable outcome. (**Appx. at 116; ROA.1324.**)

While Ms. Medlin benefited from accepting responsibility for her actions (receiving a reduction of her guidelines calculations), and cooperating against Appellant, the discrepancy between the codefendants' sentences is striking. Ms. Medlin received one year of probation with six months of home confinement as a condition, whereas Appellant received a total sentence of 87 months. This total sentence, at the high end of the Guidelines, unreasonably broached Congressional determination of the severity of the offense of making false statements on firearms applications, and imposed a sentence that was greater than necessary to promote just punishment. A sentence of 60 months, even, would be more than the average and median sentences for this offense, but it would at least be closer to reasonableness.

Even more granularly, of the 1,000 cases with defendants in Criminal History Category II reported to the Commission in Fiscal Year 2024, the disparate nature of Appellant's sentence become even more stark. 83.8% of all such defendants received sentences of less than five years, with the average sentence being 35 months imprisonment, and 30 months being the median sentence. *Interactive Data Analyzer* (2024). Drilling down further into the 175 cases reported out of the Fifth Circuit for similar defendants, 75.4% of defendants received sentences of less than five years,

with an average imprisonment length of 42 months, and a median sentencing length of 33 months.  ID.

In other words, it is clear that Appellant received an unreasonably high sentence.

Even if Appellant's conviction is not overturned by this honorable court, Appellant's sentence must nonetheless be vacated and her case remanded to the District Court for resentencing to ensure that her sentence is reasonable, and that it is no greater than necessary to promote the factors contained in 18 U.S.C. § 3553(a).

## CONCLUSION

Appellant respectfully requests that this honorable court find that her recorded statements were obtained involuntarily. As a result, the admission of the statements was error, and Appellant's conviction must be reversed and her case be remanded for a new trial. An instruction must be given to the trial court that her statements may not be introduced.

Appellant further respectfully requests that this honorable court find that the physical Barrett rifle was improperly admitted. As a result, Appellant's conviction must be reversed, and her case remanded to the trial court for a new trial. An instruction must be given to the trial court that the physical rifle may not be introduced.

Appellant further respectfully requests that this honorable court find that the pictures of irrelevant firearms were improperly admitted. As a result, Appellant's conviction must be reversed, and her case remanded to the trial court for a new trial. An instruction must be given to the trial court that these photographs may not be introduced.

Alternatively, if this honorable court does not reverse her conviction, Appellant respectfully requests that this court find that her sentence was unreasonable. As a result, Appellant's sentence must be vacated, and her case remanded to the trial court for resentencing.

SUBMITTED BY:
*/s/ John T. Floyd*
John T. Floyd III
SBN: 00790700
3730 Kirby Drive, Suite 750
Houston, TX 77098
jfloyd@johntfloyd.com
713-224-0101 (Main)
713-237-1511 (Fax)

## CERTIFICATE OF SERVICE

I certify that on June 9, 2025, the foregoing document was served via ECF, email, or any other acceptable method of service on the following parties/counsel:

**Carmen Mitchell**
Assistant United States Attorney
carmen.mitchell@usdoj.gov
U.S. Attorney's Office
1000 Louisiana Street, Suite 2300
Houston, Texas 77002

*/s/ John T. Floyd*
John T. Floyd

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of F<small>ED.</small> R. A<small>PP.</small> P. 32(a)(7)(B) because, excluding the parts of the document exempted by F<small>ED.</small> R. A<small>PP.</small> P. 32(f) and 5th C<small>IR.</small> R. 32.1: this document contains 6,710 words.

2.  This document complies with the typeface requirements of F<small>ED.</small> R. A<small>PP.</small> P. 32(a)(5), and 5th C<small>IR.</small> R. 32.1 and the type-style requirements of F<small>ED.</small> R. A<small>PP.</small> P. 32(a)(6) because:  this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 (Word) in 14-point Times New Roman.

*/s/ John T. Floyd*
John T. Floyd

30